JOHN DOE, on the demise of HENRY C. BARRETT and SABIA C. BARRETT, his wife, in right of said SABIA C. and GEORGE F. EASTON and ANNIE E. EASTON, his wife, in right of said ANNIE E., v. RICHARD ROE, casual ejector, and ELIZABETH A. JEFFERSON, tenant in possession.

Whenever in an action of ejectment a claim of right by adverse possession of twenty years or more is set up by the defendant against the clear and undisputed legal title of the plaintiff to the premises, the burden of establishing it to the satisfaction of the jury always rests upon the defendant.

In a case of disputed title on such a ground, if the evidence simply be that a mother who held the legal title to the premises in question allowed a son of hers to take possession under a verbal agreement merely to buy them of her and to use, occupy, and enjoy them as his own property for several years and as long as she lived afterward, although she devised them in her will, made in the meantime, to two of her granddaughters, the jury will be warranted in presuming that he had bought them of her, and if so, his possession of the premises had been adverse from the time he had entered into possession of them under the agreement.

But if their verbal agreement further stipulated that he was to pay her rent for the premises until he had paid her the price agreed on for them, the relation of landlord and tenant subsisted between them with respect to the premises, and his possession of them was permissive and not adverse, so long as that relation continued between them and until he unequivocally repudiated it; and if that was not done by him twenty years at least before the commencement of the action, the plaintiffs, the devisees under her will, were entitled to recover the premises.

The relation of landlord and tenant may be proved by parol or circumstantial as well as by written or direct evidence, and the actual payment of rent by one person and the receipt of it by another has always been considered the strongest kind of evidence to establish that relation between them.

THIS was an action of ejectment for a tract of eighty or ninety acres of land in Nanticoke Hundred, commenced on the 30th day of March, 1878. The lessees of the plaintiff claimed title to it under the last will and testament of Elizabeth Jefferson, deceased, probated on the 15th day of September, 1863, in which she devised it to Sabia C. Jefferson (now Sabia C. Barrett), daughter of her son, Cyrus S. Jefferson, and Annie E. Jefferson (now Annie E. Easton), daughter of her son, John W. Jefferson, to them, their heirs and assigns.

John H. Swain, the first witness called for the plaintiff, testi-

fied that he knew the testatrix, Elizabeth Jefferson, and her son, Cyrus S. Jefferson, in their lifetime, and that she owned the tract of land in question; that he lived on it as her tenant in the year 1841 or 1842. Her son, Cyrus S. Jefferson, lived on it, and went on it in 1849. She died in 1863, and in 1866 he had some conversation with Cyrus S. Jefferson about the lands, in which he said that it would have been better if the old woman had not left the land to the girls, and they would have been better off if she had not left it to them, because it would cost more to divide it between them in court than it was worth, and that if the girls would sell it to him at a reasonable price he would buy it of them. Cyrus S. Jefferson remained on the land and used it as his own until his death in 1877.

Ann G. Hubbard was the next witness called, and testified that Elizabeth Jefferson, the testatrix, was her mother, and bought the tract of land in question in 1835, but never lived on it herself. She rented of her the house and garden on it in 1844, and lived there two years. Her brother, Cyrus S. Jefferson, moved on it in 1849 with her mother's permission, and she knows that he paid her rent for it in 1851 and 1852. In 1856 her mother asked him for the rent, to which he replied that he paid the taxes and kept up the repairs, and that was as much as he could do, and that was about the same answer he gave her every year afterward. In 1870 she heard him say that he owned but six feet of land one way and four the other in the world. That was when he was on a visit to us in Philadelphia. And she heard him on the same visit say that he had tried to buy of Mrs. Barrett her interest in it and had offered her a hundred dollars for it, but she hooted at it and demanded five hundred dollars.

The plaintiff produced no further testimony except the paper title of the testatrix to the premises. The defense was that the son of the testatrix, Cyrus S. Jefferson, had entered into possession of the land and premises in question under a verbal agreement with his mother, Elizabeth Jefferson, to buy them of her, and had ever since used, occupied, and enjoyed them as his own up to the time of his death in 1877.

Mary S. Teague, the first witness called for the defendant,

testified that she was the daughter of Elizabeth Jefferson, deceased, and that a short time before the first of the year 1849 her mother asked her what she thought of her selling the Fletcher land (the name by which the tract in question was generally called and known) to her brother, Cyrus S. Jefferson, and she replied to her that she thought that they had better remain further apart. She then told her that she had sold it to him, and soon after that he moved on the land and lived on it till his death, and used it as his own and cut the timber on it at his will and pleasure, and if he ever paid her mother any rent for it she never knew it.

Noble Connaway, the next witness, testified that he lived about a mile from the land in dispute and had known it from his early boyhood. Cyrus S. Jefferson went into possession of it in 1848 or 1849, and occupied it as his own up to the time of his death, and cut off all the timber on it. He heard a dispute between him and his mother on the land in 1857 or 1859. She told him to give her an ear of corn as rent for it. He told her he would not do it, but if at any time she wanted an ear of corn from the land she might take it and put it in her pocket, but not as rent, for if she claimed it as rent he would take it out of her pocket.

Joshua A. Lamden, another witness, also testified to the possession of the land by Cyrus S. Jefferson up to the time of his death and that he used and enjoyed it as his own, and cut and disposed of the timber on it when and as he pleased.

William Fleetwood, another witness, testified that he heard Elizabeth Jefferson say in 1851 that her son, Cyrus S. Jefferson, had paid her two hundred dollars for the land, and that it had come at a very good time for her.

Other witnesses were also called and examined by the counsel for the defendant, but their testimony was cumulative merely and added nothing material to the preceding evidence on her behalf.

A mortgage of the premises by Cyrus S. Jefferson to Robert G. Ellegood, executed in 1867, with the writ of *sci. fi.* afterward sued out of court thereon, and the sale thereof by the sheriff to him, and the deed of the sheriff to him for the same, were produced and put in evidence by the counsel for the plaintiff.

*Richards*, for the plaintiffs : The only defense set up in the case was an alleged adverse possession in law of the premises by Cyrus S. Jefferson for twenty years and more, when the suit was commenced, against the right and title of his mother, Elizabeth Jefferson, and which it is alleged by the defendant in the case was granted to the said Cyrus S. Jefferson by her, and commenced under a verbal agreement between them on her part to sell the land to him, and on his part to buy it of her, the terms of which in no particular whatever have been proved, stated, or even alluded to by any witness examined, or by the counsel for the defendant in his opening or during the examination of the witnesses in the case—not even the price, nor when nor how it was to be paid. It might be, perhaps, that the terms of the contract were to be agreed on afterward, and he was to pay for it as soon as he was able to do so, when the price was to be fixed. Be that as it may, however, it is admitted by the defendant that he entered into the possession of it by and with the express consent of his mother under an agreement with her to buy it, and it was therefore according to the defendant's own claim and pretension a permissive possession in its inception, and so continued to be and could not have become an adverse possession against her until he had clearly and unequivocally repudiated the agreement between them by expressly and positively refusing afterward to pay her for it, which he never did; and there was no proof by any witness in the case, and no pretension or allegation even made on the other side, that he ever repudiated or attempted to repudiate it by refusing to pay her the price agreed upon for it, whatever that might have been. Even if he failed in fact to pay her anything for it, as we say and believe he did, it could not in law have constituted a repudiation of the agreement by him; while, on the contrary, if he paid anything it was a distinct recognition on his part that it was then a subsisting agreement between them. *Ang. on Lim.*, secs. 384, 385; 1 *Johns.* 155; 9 *Johns.* 174; 2 *Bibb.* 506.

Admitting that Cyrus S. Jefferson was in what is termed the permissive possession of the premises under an agreement with his mother to buy them of her and pay her for them at a future time, then it was perfectly evident that she was grossly mis-

taken as to her legal rights and the true nature and quality of her claim in law against him when she demanded of him that he should pay her rent for the premises instead of the purchase-money for them according to the contract price agreed upon between them. For if such was simply the agreement, of course he owed her no rent, though he may not have paid her a cent of the purchase-money in the meantime, and therefore she had no right in law by the terms of the agreement to make such a demand upon him, while he had a right equally as clear and complete in *forum legis* to refuse to comply with it. But even such a marked, emphatic, and absolute refusal to pay any rent or anything as rent for the premises as had been proved in this case on his part, could not possibly be interpreted to constitute either in law or fact a repudiation by him of his promise or agreement to pay her the purchase-money or the price agreed on for them, or any part of it. So much then for his repudiation of any obligation to pay rent for the premises, and we will let it pass.

But suppose the alleged agreement between them in regard to his buying the land was not quite so thin as had been represented ; and as it seemed that he was to have his own time to pay for it, that it was further agreed between them, as was very probable, that he was to pay taxes, keep up repairs, and give her some specified portion of the crops yearly as rent in lieu of the annual interest on the contract price for the premises until he had paid it in full to her, then and in that case the agreement and the possession of the premises given him under it clearly constituted for the time being a renting or demise of them by her to him on those terms, coupled with an executory contract or agreement on her part to sell and convey them to him by a good and valid deed of bargain and sale on his paying her for them the price agreed on between them ; and if so, then she had a perfect right to demand such rent from him in the meantime, and the fact that she did demand rent from him afterward only rendered the supposition more reasonable and probable. And if there was such a renting or demise of the premises to him by her, then the relation of landlord and tenant subsisted between them with reference to the premises until they

were fully paid for; and if such was the case, there could have been no adverse possession of the premises by him, the tenant, against her, the landlord, however long it might have continued, although he never paid her a particle of such rent, or one cent of the price agreed on for them in the meanwhile. *Ang. on Lim.*, sec. 406; 4 *Conn.* 95; 12 *Mass.* 325; 6 *Cow.* 401; 1 *Met.* 267.

Now, these facts and considerations clearly demonstrated that in neither aspect in which the case had thus been presented could there have been at any time an adverse possession of the premises in question by Cyrus S. Jefferson against his mother, Elizabeth Jefferson, until at least they had been fully paid for; but, on the contrary, that it had been from its inception a purely permissive possession on his part by her remarkable forbearance, indulgence, and consent; for, notwithstanding the testimony of one solitary witness to the contrary, altogether too strong to save it from suspicion and doubt, there was not a particle of proof that he ever paid her anything, and it was doubtless the sad conviction and consciousness of this melancholy fact on her part that prompted her at last to give it in such a solemn manner and in such a grave instrument as her last will and testament to her two young granddaughters named in it. He would only say further, in reference to the testimony of the witness just referred to, that it was very brief but very strong, and directly to the point, and could not possibly have been made any stronger or more directly to the point to be proved by it, for it purports to consist of an admission which he heard Elizabeth Jefferson make as far back as the year 1851, that her son, Cyrus S. Jefferson, had paid her two hundred dollars for the land, and that it had come at a very good time for her. But he is the only witness that ever heard her say that or anything like it, then or at any other time, for not one of her daughters, several of whom had been examined as witnesses in the case, had ever heard her say that he had ever paid her one cent for it. At least, neither they nor anybody else, except the solitary witness referred to, had proved any other single payment to her by him. And even he did not see the amount of money he mentioned paid, but only heard her say it had been, when nobody else was present, as the jury must infer, since no other witness has either directly or

indirectly corroborated his statement.    There was another prin-
ciple of law to which he would refer the court and then con-
clude, although he scarcely deemed it necessary to do it, and it
was this : In an action of ejectment if the defense of adverse
possession is set up, it is incumbent upon the defendant to estab-
lish it to the satisfaction of the jury ; and if, on the whole evi-
dence produced in the case, the jury are in doubt whether the
possession was permissive or adverse, the title claimed by adverse
possession must fail.    1 *Met.* 267 ; 5 *Met.* 173, 174 ; 4 *Conn.* 95.

*Cullen,* for the defendant : The possession of the premises by
Cyrus S. Jefferson was adverse in its inception.    The plaintiffs
admit that it was lawfully and peaceably, and not wrongfully
or forcibly, acquired against either the will or knowledge of his
mother, and the evidence not only showed that possession of
them with her consent under an agreement between them to buy
them of her, but that he at once commenced and continued as
long as she lived to occupy, use, and enjoy them as his own
property with her knowledge and without objection on her
part, and both by word and act openly claimed the complete and
exclusive and sole ownership of them under the agreement
during the whole of that time, or, in other words, from the year
1849 to the year 1863.    And that possession given him by her
under the agreement, with her subsequent sanction of the manner
in which he was using them and claimed to hold and own them,
constituted in fact a transfer of the property in and the owner-
ship of them from her to him subject only to the personal and
pecuniary claim which she had against him for the price of them,
and which by an action at law and a recovery thereon might
have been made a lien upon them.    That was all the right or
claim which then remained to her, although the formal legal
title to the premises was still vested in her.    And as it was ad-
mitted on the other side that he was thus put into the possession
of the premises, no action of ejectment could be maintained
against the defendant in the suit, who had lawfully succeeded to
it under him, without a demand by the plaintiffs of the posses-
sion and legal notice served upon her to quit the premises.
13 *East.* 210 ; 24 *E. C. L. Rep.* 470.    Where a party goes into

the possession of land under a color of title or with the intent to hold and claim it as his own, the possession is adverse, which is a claim of right. 5 *Cow.* 74, 92; 6 *Johns.* 46; *Ang. on Lim.,* secs. 410, 435; 9 *Johns.* 174; 18 *Johns.* 40; 1 *Cow.* 604; 8 *Cow.* 589. And where the bar of the statute begins to run in the lifetime of the ancestor, it continues to run from that time and is not suspended on his death.

*Robinson,* for the plaintiffs : The contention of the plaintiffs was that Cyrus S. Jefferson rented the premises of his mother under a verbal agreement merely to buy them and pay for them afterward, which he never did, and that the forbearance of the mother to compel him to pay or to proceed for any other reason to recover the possession of the premises from him did not affect or change the relation of landlord and tenant which commenced with and subsisted under the agreement between them as long as she lived ; but if a tenant disclaims possession as tenant and claims by a right adverse to the landlord, it will dispense with the necessity for a demand of the possession or notice to quit before the action is commenced. 4 *Harr.* 518. But if he ever conceived the idea of repudiating that relation between them and setting up a claim to the ownership of the premises and an adverse possession of them as against his mother until several years after her death, how was it to be reconciled with the proof in the case that he went to Philadelphia after her death and tried to buy the share and interest of one of the devisees in the premises, or that he said on the same visit there to his sister, Mrs. Hubbard, that he owned but six feet of land one way and four the other in the world ? That was too grave a matter to allude to jestingly or in any other than in a serious and thoughtful mood. Or with the further testimony of the same witness that she knew he paid her mother rent for the premises in 1851 and 1852, but when she asked him for rent in 1856 he replied that he paid the taxes and kept up the repairs and that was as much as he could do ? He had then been in possession of the premises seven years, for Mrs. Teague, another daughter of the testatrix, had testified that he went into the possession of them in 1849, soon after her mother had told her that she had sold

them to him, and which, so far as the testimony showed, was before he had ever intimated any intention to repudiate his obligation to pay rent to his mother for them, for even then he did not deny that he owed her rent for them, but simply said in reply to her demand for rent that he paid the taxes and kept up the repairs and that was as much as he could do ; and she also testified that he made the same reply every year afterward to her demand for rent, showing that she kept up her demand for it as long as she lived, and which clearly indicated that it must have been a part of the agreement between them that he was to pay her rent until the premises were paid for by him, and upon that point the testimony of the same witness that she knew he paid her mother rent for the premises in 1851 and 1852 was absolutely conclusive. But there was no proof that he ever paid any after that, although yearly demanded of him, until he had grown so bold in his bad and dishonest treatment of her and under her long forbearance and submission to it, as by the year 1857, or not later than the year 1859, to deny to her very face that he was bound to pay her any rent whatever, and to have one of his neighbors present on the very land itself to witness the disreputable fact which he had proved in his testimony that he utterly repudiated in express and emphatic terms addressed directly to her any obligation or agreement to pay her anything as rent for the premises. A more deliberate, pointed, and positive repudiation of the relation of landlord and tenant then subsisting between them in respect to the premises in question could not have been conceived or contrived than was enacted by him on that occasion. But in addition to that, he would call the attention of the court to the fact that it was again as distinctly and positively though indirectly repudiated by him in the mortgage of the premises afterward executed and delivered by him to Dr. Robert G. Ellegood given in evidence, and under which they were sold at sheriff's sale and bought by the mortgagee, and were now in the actual possession of the defendant in the action.

*The Court, Comegys, C. J., charged the jury:* That the plaintiffs and the defendant in the action, so far as their respective legal

rights to the premises in question were concerned and involved in it, both claimed to derive their right and title to them through and from one and same former owner of them in fee simple, Elizabeth Jefferson, deceased, the real plaintiffs in the action, Henry C. Barrett and Sabia C. Barrett, his wife, in right of his wife, and George F. Easton and Annie E. Easton, his wife, in right of his wife, under her last will and testament, in which she devised them to the said wives under their maiden names respectively, and before their marriage to their said husbands, as follows : " To Sabia C. Jefferson, daughter of my son, Cyrus S. Jefferson, and Annie E. Jefferson, daughter of my son, John W. Jefferson, to them, their heirs and assigns," and the real defendant in the action, Elizabeth A. Jefferson, the tenant now in possession of them, and who was in possession of them when the action was commenced, by virtue of an alleged holding of them by the said Cyrus S. Jefferson under a parol or verbal agreement entered into between him and the testatrix, the said Elizabeth Jefferson, his mother, in her lifetime, to buy them of her, and in pursuance of which he was put into possession of them by her in the year 1849, and that from that time he had continued to hold and own them as a purchaser and as his own property against her and the devisees named for more than twenty years before the action was commenced, and that he had thereby acquired such an adverse possession of them against her and the devisees named for more than twenty years as constitutes in law a good and sufficient defense in bar of the action.    It is in evidence, and not disputed, that he continued in the peaceable and uninterrupted, if not the adverse, possession of the premises from the beginning or the early part of the year 1849 until they were sold by the sheriff of the county under a mortgage of them executed by him to Dr. Robert G. Ellegood, on the 13th day of November, 1875, and were conveyed to the purchaser by the deed of the sheriff pursuant to the sale, dated November 1st, 1877.    The testatrix, his mother, Elizabeth Jefferson, made and executed her last will and testament on the 16th day of April, 1858, and which was duly probated on the 15th day of September, 1863, soon after her death.

The devise to her granddaughters, one of whom was the

daughter of her son, Cyrus S. Jefferson, under whom the defendant claims to have a good and lawful right to the premises by virtue of his long-continued adverse possession of them against his mother and her devisees of twenty years at least, contained in the will, implies, of course, not only a deliberate but a solemn assertion on her part of her ownership of the premises when it was made and executed by her, and also down to the time of her death, some five years and six months afterward, inasmuch as she retained it in the meantime subject to change or cancellation and left it unaltered and unrevoked at her death.

This defense of an adverse holding and possession of the premises by Cyrus S. Jefferson against his mother and the devisees under her will for the period of twenty years at least before the action was commenced, which was the 30th day of March, 1878, the plaintiffs expressly contradict and deny, and this is the main if not the only question to be considered and determined by the jury, subject to such instructions as the court is about to give in regard to the well-settled rules of law applicable to it in such a case as this.    The plaintiffs have produced in evidence before the jury a complete and perfect and undisputed legal title in fee simple to the premises conveyed to and vested in Elizabeth Jefferson, the testatrix, by two deeds of bargain and sale made, executed, and delivered to her for them, the first by James Fletcher for himself and as attorney-in-fact for James L. Fletcher, dated the 20th day of June, 1835, and the second directly from James L. Fletcher himself, dated the 29th day of November, 1838, both of them duly acknowledged and recorded in the office of the recorder of deeds in the county, and her possession of the premises under them from the time of her purchase of them until 1849, when her son, Cyrus S. Jefferson, went into possession of them.    And this is what is termed the legal paper title to premises like these, and which is *prima facie* always the best and strongest evidence that can be produced of a perfect legal title to any kind of real estate.    Wherefore it is that the law has provided for the recording of such legal titles to real estate and made them public records, when recorded as provided for, and made such record of them when produced evidence *per se* of such legal title in all courts of justice and

elsewhere; while it is furthermore provided by statute that all contracts for the sale of lands, tenements, and hereditaments, or any interest in or concerning them, shall be reduced to writing, or some memorandum or note thereof shall be signed by the party to be charged therewith, or some other person thereunto lawfully authorized by writing, or no action shall be brought whereby to charge any person upon any agreement or contract for such a purpose and although many parol or verbal agreements for such a purpose have under special or peculiar circumstances been recognized, both by courts of law and courts of equity, as proper exceptions to the broad and general requirement of the statute, nevertheless the wisdom and policy of both of the legal provisions referred to, as well as the reason and justice of the principle itself, are so strong and obvious that they have long since led to the establishment of the rule of law that whenever in an action of ejectment a claim of right by adverse possession of twenty years or more is set up by the defendant against the claim of right set up on behalf of the plaintiff by a clear and undisputed legal title such as we have just defined to the premises in controversy between them, the duty and the burden of establishing the defense of adverse possession against the legal title in such a case to the satisfaction of the jury always devolves and rests upon the defendant; and when the evidence in the case fails to prove it to their satisfaction or leaves it doubtful in their minds, it is their duty to find against such defense. There is also another positive law which has conduced to the establishment of this principle, and that is the statute which substantially provides nothing less than twenty years' adverse possession, that is to say, under a claim to hold and own it in his own right, by a defendant in an action of ejectment shall be sufficient to bar the claim and right of the plaintiff to recover the real estate sued for when the better and legal title to it is shown to be in him, and when such an adverse possession is set up and alleged and relied on by the defendant as his ground of defense against it and it is denied by the plaintiff, it becomes a question of fact between them to be determined by the jury on all the evidence before them for and against it. As the defendant has specially alleged and set it up as his ground of defense in the

action, of course the affirmative of the question rests upon him, and therefore he is justly and reasonably held to have assumed the obligation and the burden of proving and establishing his defense to the satisfaction of the jury, and if he fails to do that, on all the evidence before them upon the question, they must find against the defense so set up and sought to be proved and established by him.

The defense is that Cyrus S. Jefferson entered into the possession of the premises in 1849 under an agreement with his mother to buy them of her, and that he continued to hold, use, and enjoy them as his own until he had acquired an uninterrupted adverse possession of them of twenty years at least against her and her devisees before this action was commenced, and that the plaintiffs are consequently barred by it. No evidence whatever in writing of the alleged agreement had been produced, nor had any of the terms of it been proved or made known by the defendant in any manner to the court and jury, not even the price to be paid for them, or when or within what time, or how it was to be paid, except that he was to buy them from her. And the only evidence before the jury in relation to it was the testimony of the witness, Mrs. Teague, a daughter of the testatrix and a sister of Cyrus S. Jefferson, that her mother told her a short time before he moved on the premises that she had sold them to him, and the testimony of the witness, William Fleetwood, that he heard Mrs. Elizabeth Jefferson say in 1851 that her son, Cyrus S. Jefferson, had paid her two hundred dollars for the land, and that it had done her a good deal of good.

Now, with this evidence in the case, slight and limited as it is with regard to his taking possession of the premises under an agreement to buy them of her, taken in connection with the further evidence that he afterward lived and acted on them as any purchaser of them would, and held, used, and enjoyed them as if he was the actual owner of them in his own absolute right, the jury would be warranted in inferring from it, if there were no other evidence in the case, that he had bought them of her; for supposing it contained no other terms, brief and incomplete as it was, it imported an agreement for the transfer of the own-

ership of the premises from her to him under which she had delivered .the possession of them to him upon an indefinite credit, as well as an uncertainty as to the price to be paid for them. And if so, and that was all there was in the agreement, then his possession of the premises would be considered.in law to have been adverse from the beginning as to her, and the only right which remained to her with reference to them was to the price to be paid to her as the consideration for them. By the delivery of the possession of them to him under such an agreement, she had performed all that was to be done on her part, except to formally convey them by deed of bargain and sale to him on being paid in full the price of them.

But there was further evidence in the case to be considered by the jury on which the counsel for the plaintiffs had contended that the agreement, which was merely a verbal one, must not only have stipulated the price to be paid for the premises, but that it must have further stipulated that Cyrus S. Jefferson was to pay his mother annually a portion of the crops produced on them as rent for the premises in the meantime in lieu of interest on the price of them until it should afterward be paid in full by him, and that the price never was paid by him in her lifetime or afterward; and accordingly that the legal relation of landlord and tenant with respect to the premises subsisted between them as long as she lived, and between him and her devisees until he was divested of the possession of them by the sale on the mortgage offered in evidence and the sheriff's deed under it; and if so, then Cyrus S. Jefferson never had and never could have acquired any adverse possession of the premises against either his mother in her lifetime or her devisees after her death.

In charging you upon this point we shall not repeat the argument of the counsel for the plaintiffs or recite the evidence in the case on which they rely to establish the fact that in the agreement under which Cyrus S. Jefferson acquired the possession of the premises from his mother there must have been a further stipulation on his part to pay her rent for them, alleged by them, and that the relation of landlord and tenant subsisted between them from the beginning with respect to them, for it is all before

you, and will require but a few brief references to it by us as to the legal effect of it in case you are satisfied as to the truth of it and as to the presumptions that may be drawn from it by the jury.    And we will, therefore, merely say in the first place that there is no direct evidence before the jury that there was such a stipulation in the agreement, but the relation of landlord and tenant between the person who owns and the person who occupies the premises in question may be proved and established to the satisfaction of a jury in a trial like this by acts or facts which clearly show it, as well as by direct evidence, and the payment of rent for the premises occupied by one person to another, and so received by the other, has always been considered the strongest kind of evidence of that character to prove that the relation of landlord and tenant by the recognition of both parties then existed between them as to the premises, for which it was paid by the one and received by the other.    And we must, therefore, say to you that if you believe the testimony of the witness, Ann G. Hubbard, a daughter of Elizabeth Jefferson, the testatrix, under whose will the plaintiffs claim title to the premises, and a sister of Cyrus S. Jefferson, and are satisfied from it, after hearing all the other evidence in the case, that he paid his mother rent for the premises in 1851 and 1852, it would amount in fact, if that was so, to an admission or recognition by him, and would be strong evidence to prove that the relation of landlord and tenant subsisted between them with reference to the premises during the years of 1851 and 1852 ; and, furthermore, if the jury believed her testimony and were satisfied from it, as before stated by us, that her mother asked him for the rent in 1856, and he replied that he paid the taxes and kept up the repairs and that was as much as he could do, and that her mother received the same reply from him on asking him for the rent every year afterward, it could not be construed into a renunciation or repudiation of that relation as before admitted and recognized by him in 1851 and 1852, for he did not deny in 1856 or on any occasion afterward when he made the same reply to his mother's demand for rent that he had rented the premises of her, or say that he had bought them of her and paid her for them, but it amounted at best to a bad excuse merely for

both his failure and refusal to pay her the rent for them because he was not able to do it and pay taxes and keep up the repairs, and merely excusing himself from complying with her demand on that or any other ground would imply a recognition instead of amounting to a repudiation of his obligation to pay her rent for the premises. And although he may have paid her no rent after that, or none after 1852, the testimony to which we have just referred, if true, not only affords strong direct evidence that the relation of landlord and tenant actually existed by mutual consent between them up to 1856 at least but it also affords at the same time strong presumptive evidence that it was a part of the understanding and agreement between the mother and the son, the parties to it, when in 1849 he entered into possession of them, that he was to pay her rent for the premises until he was able to pay her for them the price agreed on between them, whatever that may have been. And if that was the case and it was true that she continued afterward to demand the rent annually from him as long as she lived, it afforded strong circumstantial evidence that the relation of landlord and tenant as to the premises so established between them was never afterward dissolved or terminated with her consent.

Upon the ground that there was such an agreement and such a renting of the premises under which Cyrus S. Jefferson was put in possession of them by his mother, Elizabeth Jefferson, the counsel for the plaintiffs had contended that his possession was not adverse, but having commenced with her consent and under the terms of such an agreement between them, it was what is termed a permissive possession, and could not have become an adverse possession, but continued a permissive possession so long as he continued to hold them under the agreement to pay rent for them, although he had paid her no rent for several years before her death, and as his agreement to buy them was executory purely in its character, and was entirely subject to his future will and pleasure, and he had not paid her for them and had never performed his agreement to buy them, his possession of them never could have become that of a purchaser of them, or thereby adverse to the right and title of his mother to them. If such were the facts and the proof in

the case, and there was nothing further to vary or modify them, the principles and conclusions of law just stated with reference to them would unquestionably apply to them; for if the jury were satisfied from the evidence that when Cyrus S. Jefferson took possession of the premises under an agreement to buy them of his mother it was further understood and agreed between them that he was to pay her rent for them until he did so he was bound by it, and as it constituted one of the terms on which he took possession of the premises with her consent it established from the beginning the relation of landlord and tenant between them as to the premises, and so long as that relation continued he could not acquire any adverse possession of them by failing or neglecting to pay the rent to her pursuant to their agreement.

But the counsel for the defendant has contended that if there was such an agreement and renting of the premises by Elizabeth Jefferson to Cyrus S. Jefferson, and the relation of landlord and tenant thereby existed between them, that it was afterward terminated and ended by his express and unequivocal repudiation of it, and that from that time his possession of the premises became adverse, and so continued to be as long as he held them afterward. The only testimony before you on that point was that of Noble Connaway that he heard a dispute between Cyrus S. Jefferson and his mother on the premises in 1857 or 1859, when she told him to give her an ear of corn as rent for the land, and that he said he would not do it, but if at any time she wanted an ear of corn from the land she might take it and put it in her pocket, but not as rent, for if she claimed it as rent he would take it out of her pocket; and with reference to which we must say that if you are satisfied of the truth of that testimony that it was direct and positive evidence of an express and unequivocal repudiation by him on that occasion of his obligation to pay her rent for the premises and of his relation as tenant of them to her, and if he never did anything after that to recognize the relation as existing nor made any acknowledgment of it in any other way his possession of the premises from that time became adverse, and her only recourse then was to institute proper legal proceedings against

him to recover from him the possession of them if her object was to repossess herself of them. She could, however, at any time within twenty years after that adverse possession on his part had thus commenced against her, had she lived so long, have instituted an action like this against him or the present defendant for that purpose. But as the twenty years' limitation of the action commenced running against her from the time the cause of action accrued several years before her death, and was not arrested or suspended by it but has since continued running against her devisees, the plaintiffs in the present action, it will be for the jury to consider and determine from the evidence whether the defendant has established to your satisfaction his defense of an adverse possession of the premises by Cyrus S. Jefferson and those under whom the defendant claims of at least twenty years' continuation before this action was commenced. If he has not, the verdict of the jury should be in favor of the plaintiffs; if he has, then in favor of the defendant. The action was commenced on the 30th day of March, 1878. Cyrus S. Jefferson's repudiation of his relation as tenant of the premises to his mother as stated in the testimony of Noble Connaway was in 1857 or 1859. Does that establish the defense? To do that the jury must be satisfied that the dispute referred to and related by the witness must have occurred before the 30th day of March, 1858.

The defendant had a verdict.